**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**BECKLEY DIVISION**

**REBECCA L. WILLIAMS**

**Plaintiff,**

**v.** **Civil Action No:** 5:26-cv-00383
**Judge:**

**KIA CORPORATION f/k/a KIA MOTORS CORPORATION,**
**a foreign corporation authorized to do business in the State of West Virginia;**
**KIA AMERICA, INC., f/k/a KIA MOTORS AMERICA, INC.**
**a foreign corporation authorized to do business in the State of West Virginia;**
**FRIENDSHIP AUTOMOTIVE, INC, d/b/a Friendship Kia of Beckley, a foreign corporation authorized to do business in the State of West Virginia**

**Defendants.**

## COMPLAINT

For her complaint against the Defendants, Plaintiff Rebecca L. Williams, alleges and states as follows:

## PARTIES

1. Plaintiff Rebecca L. Williams is a citizen and resident of Artie, Raleigh County, West Virginia.

2. Defendant Kia Corporation, f/k/a Kia Motors Corporation ("Kia Corp.") is a South Korean business corporation with a principal place of business at 12 Heolleung-ro, Seocho-gu, Seoul 06797 Republic of Korea. Defendant Kia Corp. may be served under The Hague Convention at: 231 Yangjae-dong, Seocho-gu Seoul, 137-938, Republic of Korea.

3. At all times material hereto, Defendant Kia Corp. was and is engaged in the business of designing, fabricating, manufacturing, testing, labeling, marketing, distributing and selling automobiles, including the 2017 Kia Rio LX, bearing VIN KNADM4A37H6104240 (hereinafter "the subject vehicle"). Defendant Kia Corp. was engaged in this business across the United States, including West Virginia, through its dealerships which serve as agents on behalf of Kia Corp.

4. Defendant Kia America, Inc., f/k/a Kia Motors America, Inc. ("Kia America"), is a California corporation with a principal place of business at 111 Peters Canyon Road, Irvine, California 92606. Kia America, Inc., is a wholly owned subsidiary of Defendant Kia Corporation. Kia America can be served with process via its registered agent, CT Corporation System, at 330 N. Brand Blvd., Suite 700, Glendale, CA 91203.

5. At all times material hereto, Defendant Kia America was and is engaged in the business of designing, fabricating, manufacturing, testing, labeling, marketing, distributing and selling automobiles, including the subject vehicle. Defendant Kia America was engaged in this business across the United States and specifically in West Virginia through its dealerships which serve as agents on behalf of Kia America.

6. Hereinafter, Defendants Kia Corp. and Kia America shall be collectively referred to as the "Kia Defendants."

7. Defendant Friendship Automotive, Inc., d/b/a Friendship Kia of Beckley ("Friendship Automotive") is a Tennessee corporation with its principal place of business at 1954 West State Street, Bristol, Tennessee 37620. Defendant Friendship Automotive can be served with process via its registered agent, S. Mitchell Walters, at 1954 West State Street, Bristol, Tennessee 37620. At all times material hereto, Defendant Friendship Automotive owned and operated an

automotive dealership doing business as Friendship Kia of Beckley, located at 111 Midtown Avenue, Mt. Hope, WV 25880. At all times material hereto, this dealership was and is an authorized Kia dealership engaged in the business of selling Kia branded vehicles and providing service and maintenance on Kia branded vehicles, including the subject vehicle, pursuant to the directives provided by the Kia Defendants.

8. The Kia Defendants and Defendant Friendship Automotive have regularly conducted and continue to conduct business within the State of West Virginia and Raleigh County by and through duly-authorized divisions, subdivisions, agents, servants and/or employees, and are specifically engaged in the business of designing, engineering, developing, manufacturing, formulating, fabricating, assembling, equipping, testing, inspecting, approving, repairing, labeling, advertising, promoting, marketing, packaging, supplying, warrantying, distributing, wholesaling and/or selling Kia branded vehicles and the component parts of Kia branded vehicles throughout the county and state, including the subject vehicle which Plaintiff was driving at the time of the incident and subsequent crash giving rise to this lawsuit.

**JURISDICTION AND VENUE**

9. This Court has original jurisdiction over this civil matter pursuant to 28 U.S.C. § 1332 in that the amount in controversy exceeds $75,000, exclusive of costs and interest, and involves citizens of different states.

10. The Kia Defendants submitted themselves to the jurisdiction of this Court pursuant to W. Va. Code § 56-3-33 and W. Va. Code § 31D-15-1501(d)(3), by doing, personally and through their agents, the following acts:

a. Committing a tortious act within this state by selling and/or delivering a defective product for placement into the West Virginia stream of commerce for ultimate users;

b. By manufacturing, testing, selling, distributing, assembling and servicing vehicles, including the subject vehicle, to or for persons, firms and/or corporations in this state *via* its distributors, wholesalers, and brokers. Such vehicles, including the subject vehicle, were used by West Virginia consumers in the ordinary course of commerce and trade;

c. Transacting business in West Virginia and contracting to supply services or things in West Virginia

d. By deriving substantial revenues in this state;

e. The acts or omissions of the Kia Defendants caused injuries to persons in West Virginia, including Plaintiff;

f. By engaging in the solicitation of activities in West Virginia to promote the sale, consumption, use, maintenance, distribution, assembly and repair of Kia branded vehicles, including the subject vehicle which is the subject of this; and

g. By manufacturing, testing, selling, distributing or assembling vehicles, including the subject vehicle, with knowledge or reason to foresee that its vehicles, including the subject vehicle, would be shipped in interstate commerce and would reach the market of West Virginia users or consumers.

11. The Kia Defendants are also subject to the specific personal jurisdiction of this Court for the following reasons:

a. The Kia Defendants knowingly, intentionally and deliberately placed the subject vehicle into the stream of commerce under circumstances such that the Kia Defendants should reasonably anticipate being haled into court in West Virginia to answer claims about the defects and failure of its product in West Virginia;

b. The Kia Defendants place products into the stream of commerce by targeting West Virginia consumers through multiple authorized Kia dealerships in West Virginia, including but not limited to Friendship Kia of Beckley owned and operated by Defendant Friendship Automotive;

c. Upon information and belief, the Kia Defendants have contracts with multiple dealerships in West Virginia where it contractually promises to come into the courts of West Virginia to defend claims involving the defects and failures of their products in West Virginia;

d. The Kia Defendants have a regular plan for the distribution of Kia branded products in West Virginia hoping to achieve a commercial benefit from the sale of products in West Virginia;

e. The Kia Defendants engage in national marketing of Kia branded products that intentionally pervade into the West Virginia market;

f. The Kia Defendants target marketing specific to West Virginia;

g. The Kia Defendants contract with West Virginia dealerships and those contracts require those dealerships to advertise in West Virginia, and the Kia Defendants share in the cost of those West Virginia advertisements of Kia branded products;

h. The Kia Defendants jointly participate in the interactive websites of multiple Kia dealerships located in West Virginia, including but not limited to Friendship Kia of Beckley owned and operated by Defendant Friendship Automotive;

i. The Kia Defendants certify mechanics who work at Kia dealerships in West Virginia;

j. The Kia Defendants provide certification training for mechanics who work at Kia dealerships in West Virginia;

k. The Kia Defendants send technical service bulletins regarding work procedures related to Kia branded products in West Virginia;

l. The Kia Defendants send recall notices related to safety defects into West Virginia;

m. The Kia Defendants have thousands of customers in West Virginia;

n. The Kia Defendants derive significant profits each year from the sales of Kia branded products in West Virginia; and

o. The Kia Defendants have purposefully availed themselves of the privilege and benefits of conducting business in West Virginia.

12. The claims described herein are connected with, related to and arise from the Kia Defendants' extensive contacts with West Virginia and the acts enumerated in Paragraphs 10 and 11 above.

13. Defendant Friendship Automotive availed themselves to the jurisdiction of this Court, pursuant to W. Va. Code § 56-3-33 and W. Va. Code § 31D-15-1501(d)(3), by doing, personally and through their agents, the following acts:

a. Committing a tortious act within this state by selling and/or delivering a defective product for placement into the West Virginia stream of commerce for ultimate users;

b. By marketing, selling, distributing, and servicing vehicles, including the subject vehicle, to or for persons, firms and/or corporations in this state *via* its distributors, wholesalers, and brokers. Such vehicles, including the subject vehicle, were used by West Virginia consumers in the ordinary course of commerce and trade;

c. By deriving substantial revenues in this state;

d. By transacting business in West Virginia and contracting to supply services or things in West Virginia;

e. Having an interest in, using and possessing real property in West Virginia;

f. Contracting to insure any person, property, or risk located in West Virginia;

g. The acts or omissions of Defendant Friendship Automotive caused injuries to persons in West Virginia, including Plaintiff;

h. By engaging in the solicitation of activities in West Virginia to promote the sale, consumption, use, maintenance, distribution, assembly and repair of Kia branded vehicles, including the subject vehicle which is the subject of this; and

i. By manufacturing, testing, selling, distributing or assembling vehicles, including the subject vehicle, with knowledge or reason to foresee that its vehicles, including the subject vehicle, would be shipped in interstate commerce and would reach the market of West Virginia users or consumers.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1931(b)(2) in that a substantial portion of the events giving rise to the claims herein took place within the Beckley Division of the Southern District Court of West Virginia.

**FACTS**

15. On a date prior to the events giving rise to this cause of action, the Kia Defendants designed, manufactured, fabricated, tested, assembled, sold, serviced, and/or distributed the subject vehicle, a 2017 Kia Rio LX, bearing VIN: KNADM4A37H6104240.

16. When the subject vehicle left the control of the Kia Defendants, it was not reasonably safe, and therefore defective, because it was designed, manufactured, fabricated, tested, assembled, sold, serviced, and/or distributed with a Hydraulic Electronic Control Unit ("HECU") that was unreasonably prone and susceptible to an electrical short that could result in an engine compartment fire while the subject vehicle was being driven.

17. When the subject vehicle left the control of the Kia Defendants, there were safer alternative designs other than that which was incorporated into the design of the subject vehicle. The safer alternative designs were capable of either preventing or significantly reducing the risk of serious injury and/or fatal injury without substantially impairing the subject vehicle's utility. Moreover, the safer alternative designs were economically and technologically feasible at the time of and prior to the design and manufacture of the subject vehicle.

18. The subject vehicle did not meet or perform to the expectations of end consumers or users and was defective for the following reasons:

a. The HECU in the subject vehicle was defective in design and/or manufacture in that it was unreasonably prone and susceptible to an electrical short that could and did cause an engine compartment fire while the vehicle was being driven;

b. The HECU in the subject vehicle was defective in design and/or manufacture in that it was unreasonably prone and susceptible to an electrical short that would render the brakes inoperable while the vehicle was being driven;

c. The firewall in the subject vehicle was defective in design and/or manufacture in that it failed to contain an engine compartment fire to the engine compartment and allowed the fire to progress into the subject vehicle's occupant compartment and burn occupants;

d. By virtue of the defects described herein, the subject vehicle was unsafe and inadequate for its foreseeable use;

e. The subject vehicle, as sold, was not reasonably safe due to its susceptibility to engine compartment fire and brake failure while the vehicle was being driven. Accordingly, the subject vehicle should not have been placed into the stream of commerce without an adequate design modification and/or suitable warning to purchasers and users;

f. The vehicle was not reasonably fit, suitable, or safe for its intended purpose because it was not accompanied by adequate warnings with respect to the dangerous and defective design;

g. The vehicle was defective as marketed in that the advertising and marketing campaigns and programs undertaken by the defendant and its distributors and/or retailers failed to warn consumers of the dangerous conditions of the subject vehicle as described above;

h. Failing to design the subject vehicle so that, even if an engine compartment fire occurred, the subject vehicle's firewall would contain the fire to the engine compartment and not allow it to progress into the occupant compartment where it would burn occupants;

i. The Kia Defendants failed to take necessary steps to rectify a danger which they knew or should have known existed and posed a serious risk to the public;

j. The Kia Defendants failed to reasonably and properly test and/or analyze the testing of the subject vehicle under reasonably foreseeable circumstances; and

k. The Kia Defendants failed to warn about the dangers and risks associated with the subject vehicle's operation and use.

19. In or around April of 2018, Plaintiff purchased the subject vehicle from Defendant Friendship Automotive at the Friendship Kia of Beckley dealership. At that time, the subject

vehicle's HECU and all relevant component parts were in the same condition as when the subject vehicle left the Kia Defendants' control.

20. Following Plaintiff's purchase, the subject vehicle was regularly brought back to Defendant Friendship Automotive's dealership, Friendship Kia of Beckley, for maintenance, service and repair.

21. On or about September 25, 2023, the Kia Defendants issued a recall of over 1 million vehicles equipped with the defective HECU described herein. The recall notice indicates that "the Hydraulic Electronic Control Unit (HECU) may experience an electrical short, which can result in an engine compartment fire while parked or driving."[1] This condition was caused by the defective design and manufacture of the HECU and/or its related components including but not limited to fuses.

22. The subject vehicle specifically fit the criteria identified in the recall notice under which the defective HECU could experience an electrical short leading to an engine compartment fire while driving. The recall specifically included the subject vehicle.

23. Neither the Kia Defendants nor Defendant Friends Automotive properly notified Plaintiff of the recall. Thus, Plaintiff was unaware of the extreme risk of fire associated with driving the subject vehicle with the defective, recalled HECU.

24. Despite Plaintiff being a regular customer of Defendant Friends Automotive, taking the subject vehicle to its dealership, Friendship Kia of Beckley, nine (9) times after purchasing it, Friendship Kia never contacted Plaintiff to advise her of the recall, the fire risk associated with the defective HECU, or the need to fix the HECU.

25. Plaintiff never received any notice of the recall.

[1] NHTSA Recall Campaign Number: 23V652000.

26. On November 24, 2025, Plaintiff had a scheduled maintenance and service appointment at Defendant Friendship Automotive's dealership, Friendship Kia of Beckley. When Plaintiff scheduled this appointment, no one from the dealership advised Plaintiff of the HECU recall or that she should not drive the subject vehicle to her appointment because of risk of fire while driving.

27. That morning, Plaintiff was driving the subject vehicle to the dealership via Clearfork Road. Plaintiff's mother was following Plaintiff to the dealership in her own vehicle to provide Plaintiff transportation after dropping off the subject vehicle for service.

28. While driving east on Clear Fork Road, Plaintiff applied the brakes near the bottom of Spruce Mountain. As she attempted to apply the brakes, Plaintiff observed smoke coming from the vehicle and there was no braking effect—the vehicle would not slow or stop. As a result, Plaintiff lost control of the subject vehicle and collided with an embankment on the left side of the road.

29. After the impact with the embankment, fire rapidly spread from the engine compartment into the occupant compartment where the Plaintiff was trapped. Plaintiff remained conscious following the impact but was unable to open either the driver's side or passenger side front door to escape. Plaintiff's legs caught fire.

30. Upon seeing the crash, Plaintiff's mother stopped her vehicle and tried to rescue the Plaintiff from the burning vehicle. Plaintiff was trapped in the vehicle due to damage from the embankment impact. Other good Samaritans stopped to try and render aid, however all efforts to open the subject vehicle's doors or break the windows to give Plaintiff some path of egress were unsuccessful.

31. Eventually, a good Samaritan was successful in busting the subject vehicle's rear window with a coal shovel and pulled her from the burning car. Without the assistance of that passerby, Plaintiff would not have escaped from the subject vehicle before it was engulfed in flames.

32. After Plaintiff was extricated, Plaintiff's mother drove her to Raleigh General for treatment of her injuries. Plaintiff was life flighted later that same day to West Penn Burn Center where Plaintiff underwent multiple debridement and skin graft surgeries on her legs due to the severe nature of her burn injuries.

33. Plaintiff is still recovering and receiving treatment for her injuries. The full extent of Plaintiff's future treatment is yet to be determined; however, Plaintiff will bear permanent scars and suffer from related comorbidities caused by her burns for the rest of her life.

34. As a direct and proximate result of acts and omissions of the Defendants, Plaintiff has incurred medical expenses and will continue to incur them in the future; Plaintiff has incurred lost wages and her future earning capacity has been significantly diminished; Plaintiff suffered and continues to suffer great pain, suffering, emotional distress, mental anguish and a loss of enjoyment of life.

35. By this action, Plaintiff seeks all damages available to her under applicable West Virginia law due to the Defendants' negligence and defective product, including but not limited to past and future medical expenses, past lost earnings, diminished future earning capacity, past and future pain and suffering, past and future mental anguish, past and future emotional distress and past and future loss of enjoyment of life.

**COUNT I – STRICT PRODUCT LIABILITY**
**(All Defendants)**

36. Plaintiff incorporates by reference each of the above allegations as if fully set forth herein.

37. The Kia Defendants and Friendship Kia designed, manufactured assembled, rebuilt, modernized, sold, serviced, distributed and/or placed into the stream of commerce the subject vehicle, which was used by the plaintiff in the manner for which it was designed, manufactured and marketed by the Defendants.

38. The subject vehicle was defective and/or not reasonably safe from the time it was designed, manufactured and marketed until the Plaintiff's crash in the subject vehicle, by virtue of its defective and/or unreasonably dangerous HECU and firewall as it was susceptible to starting an engine compartment fire while the subject vehicle was in operation which could also cause subsequent brake failure. The defects of the subject vehicle rendered it not reasonably safe and caused the serious and permanent injuries described herein.

39. As a direct and proximate result of the defective and/or unreasonably dangerous conditions associated with the foreseeable use and operation of the subject vehicle, the Kia Defendants and Defendant Friendship Kia are strictly liable to the Plaintiff for the severe and permanent injuries and damages described herein.

**COUNT II – NEGLIGENT DESIGN, MANUFACTURE & DISTRIBUTION**
**(Kia Defendants)**

40. Plaintiff incorporates by reference the allegations contained in the above paragraphs as if set forth fully herein.

41. In addition to the other causes of action herein, the Kia Defendants are liable for the injuries and damages suffered by the Plaintiff under a theory of negligence.

42. The Kia Defendants owe a duty of care to those individuals who use the Kia Defendants' products in a way that is reasonably foreseeable to the Kia Defendants, such as Plaintiff Rebecca Williams. The Kia Defendants owed these individuals a duty to protect them from unreasonable harm in the ordinary and foreseeable use of its products.

43. The Kia Defendants negligently breached this duty with regard to the design, marketing and manufacturing of the subject vehicle.

44. The acts or omissions which contribute to the Kia Defendants' negligence include the following:

a. Failing to identify the dangers of the HECU and firewall during the design process;

b. Designing the HECU of the subject vehicle such that it could cause engine compartment fires while the vehicle was in operation;

c. Failing to design the subject vehicle so that even if an engine compartment fire occurred, the subject vehicle's firewall would contain the fire to the engine compartment and not allow it to progress into the occupant compartment where it would burn occupants;

d. Designing the HECU in a manner made it unreasonably prone and susceptible to an electrical short that would render the brakes inoperable while the vehicle was being driven;

e. Failing to reasonably and properly test and/or analyze the testing of the subject vehicle under reasonably foreseeable circumstances;

f. Failing to disclose known problems or defects;

g. Failing to meet or exceed internal corporate guidelines;

h. Failing to provide adequate notice of the recall issued for the vehicle; and

i. Selling subject vehicle without proper warnings; and

j. Choosing to disregard and ignore generally accepted principles of hazard control ("design, guard and warn") as its obligation to hold the safety of the public paramount.

45. The negligence of the Kia Defendants proximately caused the severe and permanent injuries and damages described herein.

**COUNT III – BREACH OF WARRANTY**
**(Kia Defendants)**

46. Plaintiff incorporates by reference each of the above allegations as if fully set forth herein.

47. As is more fully described above, the Kia Defendants breached their express and implied warranties of fitness and merchantability by defectively designing, manufacturing, assembling, building, modernizing, selling, servicing, marketing and/or distributing defective and unreasonably dangerous vehicles, namely, the Kia Rio, including the subject vehicle, at the time of the events giving rise to this cause of action and was unreasonably dangerous for the use to which it was intended as reflected throughout the Kia Defendants' actions, representations, promises, affirmations, promotions, product literature, photographs and promotional materials.

48. The Kia Defendants further breached their express and implied warranties of fitness and merchantability by failing to warn and/or instruct users, purchasers, the public, and others, including the Plaintiff, concerning the dangerous characteristics of the subject vehicle when used in a reasonably foreseeable manner.

49. As a direct and proximate result of the Kia Defendants' breach of warranties arising out of the sale and marketing of the subject vehicle, the Plaintiff sustained severe and permanent injuries and damages.

50. The Kia Defendants at all times material hereto, by and through the sale of the subject vehicle, expressly and impliedly warranted to users through their actions, representations, promises, affirmations, promotions, product literature, photographs and promotional material, to all prospective consumers and the public generally, including Plaintiff, that the subject vehicle

which the Kia Defendants designed, manufactured, assembled, rebuilt, modernized, sold, serviced, marketed and/or distributed was of such quality and reasonably fit for the purpose of serving as a safe moving vehicle.

51. The subject vehicle was rendered further unreasonably dangerous because an adequate warning about the hazards with operating and/or using the subject vehicle with defects as described above was not provided to consumers, either at or after the time that the subject vehicle left the Kia Defendants' control.

52. The Kia Defendants failed to use reasonable care to provide an adequate warning of the defective and dangerous condition of the subject vehicle.

53. Users of the Kia Rio, including the subject vehicle, such as Plaintiff Rebecca Williams, did not know and should not have been expected to know of the characteristics of the subject vehicle that had a potential to cause such injuries as were suffered by Plaintiff.

54. The Kia Defendants failed to warn potential consumers and users of the Kia Rio, including the subject vehicle, of the defective and/or unreasonably dangerous conditions alleged above.

55. The Kia Defendants further breached its express and implied warranties of fitness and merchantability by failing to warn and/or instruct users, purchasers, the public, and others, including the Plaintiff, concerning the dangerous characteristics of the vehicle when used in a reasonably foreseeable manner.

56. As a direct and proximate result of the Kia Defendants' breach of warranties arising out of the sale and marketing of the subject vehicle, the Plaintiff sustained the severe and permanent injuries and damages described herein, recovery of which is provided by West Virginia law.

**COUNT IV – NEGLIGENCE**
**(Defendant Friendship Automotive)**

57. Plaintiff incorporates by reference each of the above allegations as if fully set forth herein.

58. Defendant Friendship Automotive owed a duty of reasonable care to its customers, including the Plaintiff, in the maintenance, service and repair of vehicles that it sells, including the subject vehicle.

59. Prior to the subject incident, Plaintiff was a regular customer of Defendant Friendship Automotive, having brought the subject vehicle into the Defendant's dealership for maintenance, service, or repair on nine separate occasions during her ownership of the subject vehicle.

60. Prior to the Plaintiff's service appointment at the Friendship Automotive dealer scheduled for the day of the subject incident, Defendant Friendship Automotive knew or in the exercise of reasonable care should have known that the subject vehicle was subject to the recall outlined above. Further, Defendant Friendship Automotive knew or in the exercise of reasonable care should have known that the defect in the HECU that served as the basis for the recall could cause an engine compartment fire and loss of brakes while the vehicle was in operation.

61. Despite its knowledge, Defendant Friendship Automotive did not advise the Plaintiff of the recall or the risks associated with the defect that was the basis for the recall, and took no action to protect the Plaintiff from those foreseeable dangers.

62. Defendant Friendship Automotive was negligent and breached its duty of care in one or more of the following ways:

a. Failing to properly alert or notify the Plaintiff of the recall on the subject vehicle;

b. Failing to properly alert or notify the Plaintiff of the risks associated with the defects in the HECU of the vehicle that was the basis of the recall issued by the Kia Defendants;

c. Failing to alert or notify the Plaintiff of the recall or the risks associated with the defects in the HECU of the vehicle that was the basis of the recall issued by the Kia Defendants when the Plaintiff scheduled the service appointment for November 24, 2025; and

d. Failing to advise the Plaintiff that she should not drive the subject vehicle to her service appointment on November 24, 2025 given the risks that Defendant Friendship Automotive was aware of that were associated with the defects in the HECU of the vehicle that was the basis of the recall issued by the Kia Defendants.

63. As a direct and proximate result of Defendant Friendship Automotive's negligent acts and omissions, Plaintiff sustained the severe and permanent injuries and damages described herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against these Defendants, either individually and/or jointly, for such an amount as will be determined by a jury according to the laws of the State of West Virginia, including compensatory damages, punitive damages for their conscious, reckless, and outrageous indifference to the health, safety, and welfare of others, including Plaintiff, pre-judgment and post-judgment interest, reasonable costs, attorney's fees, and for such other relief as the Court may deem just and proper.

**A JURY TRIAL IS DEMANDED.**

**REBECCA L. WILLIAMS**
By counsel,

*/s/L. Lee Javins, II*__________________
L. Lee Javins II, WVSB No. 6613
Taylor M. Norman, WVSB No. 13026
Adam S. Daugherty, WVSB No. 14444
Bailey Javins & Carter, LC

213 Hale Street
Charleston, WV 25301
Telephone: (304) 345-0346
Facsimile: (304) 345-0375
ljavins@bjc4u.com
tnorman@bjc4u.com
adaugherty@bjc4u.com

and

Terrence E. McCartney, *Pro Hac*
Christopher J. Stucky, *Pro Hac*
Austin T. Osborn, *Pro Hac*
Rhett E. Wallace, *Pro Hac*
McCartney Stucky, LLC
350 Theodore Fremd Ave., Suite 140
Rye, New York 10580
*Statement of Visiting Attorney form to be filed*

*Plaintiff's Counsel*